O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA MURRAY, ) | NO. EDCV 11-00726-MAN |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | |
| ) | AND ORDER |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff filed a Complaint on May 16, 2011, seeking review of the denial of plaintiff's application for supplemental security income ("SSI"). On June 10, 2011, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation ("Joint Stip.") on January 17, 2012, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings. (Joint Stip. at 5-8.) The Court has taken the parties' Joint Stipulation under

submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On July 13, 2007, plaintiff filed an application for SSI. (Administrative Record ("A.R.") 9.) Plaintiff, who was born on October 8, 1961 (A.R. 99),[1] claims to have been disabled since April 20, 2007 (A.R. 9), due to bipolar disorder, depression, anxiety, and non-cardiac chest pain (A.R. 60, 65). Plaintiff has past relevant work experience as a housekeeper. (A.R. 18.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 9, 60-70), plaintiff requested a hearing (A.R. 71). On June 29, 2009, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Joseph D. Schloss (the "ALJ"). (A.R. 9, 24-41.) Vocational expert David A. Rinhart also testified. (*Id.*) On November 24, 2009, the ALJ denied plaintiff's claim (A.R. 9-19), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since July 13, 2007, her application date. (A.R. 11.) The ALJ determined that plaintiff has the following severe impairments:

---

[1] On the date the application was filed, plaintiff was 45 years old, which is defined as a younger individual. 20 C.F.R. § 416.963.

"Bipolar Disorder, Depression, Post Traumatic Stress Syndrome, [and] S/P Carpal Tunnel Syndrome." (*Id.*) The ALJ also determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). (A.R. 15.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 416.967(c), with the following exceptions: "[plaintiff] is able to frequently perform gross hand and fine motor finger movements; and is moderately limited in her ability to understand, remember, and carryout [sic] detailed instructions and set realistic goals or make plans independently of others." (A.R. 16.)

The ALJ determined that plaintiff "is capable of performing [her] past relevant work as a housekeeper," because "[t]his work does not require the performance of work-related activities precluded by [plaintiff's RFC]." (A.R. 18.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, since July 13, 2007, the date her SSI application was filed. (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. <u>Orn v. Astrue</u>, 495

F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins

v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

## DISCUSSION

Plaintiff claims that the ALJ did not properly consider the April 7, 2008 opinion of State agency physician Donald Williams, M.D. (Joint Stip. at 3.) Specifically, plaintiff claims that the ALJ erred in failing to include a number of "impairments," in which plaintiff was found to be "not significantly limited," in his RFC assessment for plaintiff. (*Id.* at 4-5.)

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(d).

In evaluating opinion evidence, an ALJ is required to consider the opinions and findings of State agency medical consultants. 20 C.F.R. § 416.927(f)(2)(i). Further, "[u]nless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency [consultant]." 20 C.F.R. § 416.927(f)(2)(ii); *see* SSR 96-6p (1996), 1996 SSR LEXIS 3, at *5, 1996

WL 374180, at *2 (stating that an ALJ "may not ignore" the opinions of State agency medical consultants "and must explain the weight given to the opinions in their decision").

In determining a claimant's RFC, an ALJ will consider all the relevant evidence in the record. 20 C.F.R. § 416.945(a). In so doing, the ALJ will consider all claimant's medically determinable impairments, including those that are not "'severe.'" *Id.* "An impairment or combination of impairments is not severe if it does not significantly limit [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a).

On April 7, 2008, Dr. Williams, a State agency medical consultant, completed a nonexamining, consultative review of plaintiff's medical record. (A.R. 358-72.) Dr. Williams determined that plaintiff has a medically determinable impairment that does not precisely satisfy the diagnostic criteria for the following listed disorders: 12.04 Affective Disorder; 12.06 Anxiety Disorder; and 12.09 Substance Addiction Disorder. (A.R. 361-65.) Notwithstanding this determination, Dr. Williams opined that plaintiff has functional limitations, including: mild restriction in activities of daily activities; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.[2] (A.R. 367.) Dr. Williams noted, however, that plaintiff's symptoms are either reduced or eliminated when she complies with her medication regime and avoids abusing substances. (A.R. 361-65.)

---

[2] He also noted that plaintiff has had no episodes of decompensation. (*Id.*)

As part of his consultative review, Dr. Williams completed a "Mental Residual Functional Capacity Assessment" ("Assessment") of plaintiff. The Assessment consists of three sections. In Section I, entitled "Summary Conclusions," the evaluator is directed to record "summary conclusions derived from the evidence in file" with respect to "the individual's capacity to sustain [each mental] activity over a normal workday and workweek, on an ongoing basis." (A.R. 370.) The Assessment instructs the evaluator, however, to record a "[d]etailed explanation of the degree of limitation for each [of the four categories of mental functioning], as well as any other assessment information [he/she] deem[s] appropriate, . . . in Section III (Functional Capacity Assessment)." (*Id.*)

Section II of the Assessment, entitled "Remarks," is to be completed by the evaluator when there is insufficient documentation to perform an accurate functional capacity assessment. (A.R. 370-71.) Assuming there are no such deficiencies, the evaluator completes Section III of the Assessment, entitled "Functional Capacity Assessment." In it, the evaluator explains his or her summary conclusions in narrative form. (A.R. 372.) Section III is to be filled out "only after the Summary Conclusion section has been completed." (*Id.*; emphasis omitted.)

As explained in the Social Security Program Operations Manual System ("POMS"),[3] "[t]he purpose of [S]ection I ('Summary Conclusion')

---

[3] The Ninth Circuit has recognized that while the POMS "does not have the force of law," it is "persuasive authority." Warre v. Comm'r of SSA, 439 F.3d 1001, 1005 (9th Cir. 2006).

. . . is chiefly to have a worksheet to ensure that the [evaluator] has considered each of these pertinent mental activities and the claimant's . . . degree of limitation for sustaining these activities over a normal workday and workweek on an ongoing, appropriate, and independent basis." POMS DI 25020.010(B)(1). Significantly, the POMS notes that "**[i]t is the narrative** written by the [evaluator] **in [S]ection III** ('Functional Capacity Assessment') **that adjudicators are to use as the assessment of RFC.**" (*Id.*)  Accordingly, the "[a]judicators must take the RFC assessment **in [S]ection III** and decide what significance the elements discussed in this RFC assessment have in terms of the [claimant]'s ability to meet the mental demands of past work or other work." *Id.* (emphasis in original).

In the "Understanding and Memory" portion of Section I, Dr. Williams found plaintiff to be: "Moderately Limited" in her ability to understand and remember detailed instructions; and "Not Significantly Limited" in her ability to understand very short and simple instructions and remember locations and work-like procedures. (A.R. 370.)

In the "Sustained Concentration and Persistence" portion of Section I, Dr. Williams found plaintiff to be "Moderately Limited" in her ability to carry out detailed instructions, and "Not Significantly Limited" in her ability to: carry out very short and simple instructions; sustain an ordinary routine without special supervision; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (*Id.*)  He also found plaintiff to have "No Evidence of Limitation" in her ability to: (1) maintain attention and concentration for extended periods; (2) work in

coordination with or proximity to others without being distracted by them; (3) make simple work-related decisions; and (4) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (A.R. 370-71.)

In the "Social Interaction" portion of Section I, Dr. Williams found plaintiff to be "Not Significantly Limited" in her ability to: ask simple questions or request assistance; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. (A.R. 371.) Dr. Williams also found plaintiff to have "No Evidence of Limitation" in her ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*)

Finally, in the "Adaptation" portion of Section I, Dr. Williams found plaintiff to be: "Moderately Limited" in her ability to set realistic goals or make plans independently of others; and "Not Significantly Limited" in her ability to be aware of normal hazards and take appropriate precautions, and to travel in unfamiliar places or use public transportation. He also found "No Evidence of Limitation" in plaintiff's ability to respond appropriately to changes in the work setting. (*Id.*)

After completing Section I and finding no deficiencies in Section II, Dr. Williams completed Section III of the Assessment. Dr. Williams opined, *inter alia*, that plaintiff can relate adequately, keep

appointments, and perform unskilled work that involves working with the public. (A.R. 372.)

Contrary to plaintiff's contention, the ALJ committed no reversible error in considering the opinion of Dr. Williams. In his decision, the ALJ specifically referred to Dr. Williams' April 7, 2008 Assessment. (A.R. 13, 18.) The ALJ noted, for example, that Dr. Williams found plaintiff to be "moderately limited in her ability to understand, remember and carry out detailed instructions and set realistic goals or make plans independently of others." (A.R. 13.) The ALJ also noted that Dr. Williams "rated [plaintiff] as having restrictions and/or limitations in the broad areas of functioning under the 'B' criteria of Listings 12.04 and 12.09 to include mild limitations in daily living activities and social functioning but moderate limitations in concentration and no episodes of decompensation." (*Id.*) Further, the ALJ specifically noted that "Dr. Williams did not find any evidence of [plaintiff] having limitations in the area of responding appropriately to supervision and co-workers and usual work situations or in dealing with changes in routine work settings." (*Id.*)

Although the ALJ clearly considered the opinion of Dr. Williams in assessing plaintiff's RFC, he ultimately gave more "considerable weight" to the conclusions reached by plaintiff's treating physician, Elizabeth Leonard, M.D., after plaintiff "bec[a]me clean and sober."[4] (A.R. 16.) As noted in the ALJ's decision, beginning in March 2008, plaintiff's

---

[4] The ALJ also noted that he gave weight to the program consultant's functional assessment of plaintiff to the extent it was consistent with that of Dr. Leonard. (A.R. 16.)

symptoms began to improve as plaintiff became more compliant with her medication regime and stayed sober from alcohol and drugs. (A.R. 11.) By April 30, 2008, plaintiff's "thoughts were noted as logical and [plaintiff] denied having acute depressive or anxious symptoms." (A.R. 13.) On July 23, 2008, plaintiff's symptoms were "increasingly under control; and, on April 9, 2009[,] Dr. Leonard noted that [plaintiff]'s symptoms were increasingly under control; [and her] appearance, affect, moods, attention, and speech were entirely appropriate. [Dr. Leonard] also added that there was 'no psychosis, no substance abuse' . . . . " (*Id.*) Accordingly, based on Dr. Leonard's later treatment records -- records which reflect plaintiff's improved condition when she complied with her medication regime and did not abuse substances in and following March 2008 -- the ALJ determined that plaintiff has the RFC to perform medium work but is "moderately limited in her ability to understand, remember, and carryout [sic] detailed instructions and set realistic goals or make plans independently of others."[5] (A.R. 16.)

Plaintiff claims that the ALJ committed error by failing to include in his assessment of plaintiff's RFC the above described areas in which Dr. Williams found plaintiff to be "Not Significantly Limited." As an initial matter, the ALJ properly gave greater weight to records from plaintiff's treating source, Dr. Leonard, in assessing plaintiff's RFC. Dr. Leonard's treatment records -- which either postdate or do not appear to have been considered by Dr. Williams -- reflect plaintiff's improved condition after becoming sober and complying with her

---

[5] The ALJ also found that plaintiff was "able to frequently perform gross hand and fine motor finger movements." (A.R. 16.)

11

medication regime.[6] Moreover, even assuming *arguendo* that the ALJ committed error in failing to include in his assessment of plaintiff's RFC the Section I areas of the Assessment in which Dr. Williams found plaintiff to be "Not Significantly Limited," any such error was harmless. In Section III of the Assessment -- the section which the POMS directs the ALJ to use in assessing plaintiff's RFC -- Dr. Williams specifically found that plaintiff was capable of performing unskilled work with the public, notwithstanding her mental limitations. As such, and as noted by the ALJ,[7] Dr. Williams' finding is not inconsistent with the ALJ's determination that plaintiff can perform her past relevant work as a housekeeper. Accordingly, the ALJ committed no reversible error in his consideration of the opinion of Dr. Williams.

///
///
///
///
///
///
///
///
///

---

[6] Significantly, as noted *supra*, Dr. Williams found that plaintiff's symptoms were either reduced or eliminated when she complied with her medication regime and did not abuse substances.

[7] In finding plaintiff capable of performing her past relevant work, the ALJ noted that plaintiff "demonstrates the ability to work with supervision and others as co-workers and to deal with others in a changing work setting." (A.R. 18.) The ALJ specifically noted that "[t]his pattern of behavior is also consistent with the findings of Dr. Williams . . . who found no limitations in th[is] specific area." (*Id.*)

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Neither reversal of the Commissioner's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration. IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for the Commissioner.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 8, 2012

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE